FILED

NOT FOR PUBLICATION

APR 16 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. SC-13-1047-PaJuKu |
| RICHARD SCOTT URBAN, | Bankr. No. 12-02444-MM7 |
| Debtor. | Adv. Proc. 12-90154-MM |
| RICHARD SCOTT URBAN, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| BCS WEST, LLC, | |
| Appellee. | |

Argued and Submitted on March 20, 2014
at Pasadena, California

Filed - April 16, 2014

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret Mann, Bankruptcy Judge, Presiding

Appearances:   Kerry Todd Curry of Curry & Associates argued for appellant Richard Scott Urban; Marc F. Forsythe of Goe & Forsythe, LLP argued for appellee BCS West, LLC.

Before: PAPPAS, JURY and KURTZ, Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, chapter 7[2] debtor Richard Scott Urban ("Urban"), appeals the order of the bankruptcy court granting summary judgment to Appellee BCS West, LLC ("BCS") determining that Urban's debt to BCS is excepted from discharge under § 523(a)(2)(A) and (a)(4). We VACATE the bankruptcy court's summary judgment and REMAND.

## FACTS

BCS was formed in June 2000, and over the next eight years operated auto sales and rental businesses at several locations in central and southern California. The original members were Urban, Brian Britton ("Britton"), David Stirsman ("Stirsman") and Rob Millum ("Millum"). The four members invested $100,000 each, and Britton and Stirsman loaned BCS $300,000 each. In March 2005, Millum, who had been regional manager of operations for BCS, departed and his interest was purchased by the other members. Millum's duties were assumed by Urban, and his interest was redistributed among the three remaining members, who, in mid-2005, were approximately each one-third owners of BCS.

In 2000, Key Bank, N.A. ("Key Bank") had provided the original "flooring line of credit"[3] to BCS and continued to meet

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

[3] A flooring line of credit, also known as a floor-plan line of credit, refers to "[a] loan that is secured by merchandise and paid off as the goods are sold." BLACK'S LAW DICTIONARY 663 (9th ed. 2009); see Eisenbarth v. Eisenbarth

continue...

BCS's borrowing needs from 2000 to 2008.

It is undisputed that, from its beginning, BCS was plagued by a shortage of working capital. In addition, as a result of the poor economic conditions following September 11, 2001, sales and rentals at the BCS dealerships declined. By 2004, BCS's working capital had declined to $141,000, in March of 2005 it was approximately negative $250,000, and by September of 2005 its working capital was a negative $477,000.

BCS alleges that from the time Urban took over operations following the departure of Millum in March 2005, through a September 2006 meeting of members, Urban concealed information regarding the finances of BCS from Britton and Stirsman, and in particular, that he concealed that BCS was Sold Out of Trust ("SOT") on the Key Bank loan for about $700,000. The SOT condition occurred, Urban alleges, because by mid-2006, the declines in BCS working capital, coupled with demands for payments from vendors, had forced Urban to choose between "paying Key Bank and shutting down BCS's business on the one hand, or using proceeds from vehicle sales to pay other critical operating expenses and attempting to make up the deficit later, on the other hand." Urban Decl. at 3, November 9, 2012. Urban states

---

[3]...continue
(In re Eisenbarth), 2011 Bankr. LEXIS 2752, at * 2-3 (Bankr. D. Mont. July 15, 2011) (discussing flooring lines of credit). When each "floored" automobile is sold by the dealer, the loan advance against that auto is to be repaid, usually within 90 days of the sale. Failure to pay the obligation puts the dealer in the Sold Out of Trust condition. In addition, placing a second lien on an auto or motorcycle subject to a floor plan loan is referred to as "double flooring."

that "as Chief Operating Officer in mid-2006 he chose the latter." Id. Urban concedes that he did not consult with or inform Britton and Stirsman that he was putting BCS into an SOT condition with Key Bank.

As noted above, there was a meeting of BCS members in September 2006, by which point Britton and Stirsman had become aware of the SOT situation. In spite of what an arbitrator would later describe as the realization that they had been "blindsided" by Urban, the other members permitted him to continue as head of operations and finance and, in fact, Urban was given a pay raise in October 2007. The Key Bank SOT condition was eventually resolved in October 2006, when the bank was paid using a $750,000 investment in BCS by Pacific Coast Protection Plan, an affiliated company owned by Urban, Britton and Stirsman.

Urban was removed from his management positions at BCS in March 2008, although he remained a member of BCS. In October or November 2008, the BCS businesses were closed and thereafter liquidated.

In July 2009, Britton and Stirsman caused BCS to commence an arbitration proceeding against Urban. BCS alleged causes of action against Urban for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, intentional interference with economic advantage, and negligent interference with economic advantage. Urban defended and asserted nine counter-claims against BCS. A contested hearing in the arbitration was held from September 13 through September 18, 2010.

-4-

On February 2, 2011, the arbitrator issued a decision in the form of an Arbitration Award (the "Award"). The arbitrator's findings of fact critical to this appeal consisted of the following:

> Based on clear and convincing evidence, the arbitrator finds that from at least the time Millum separated from BCS (March 4, 2005 until the September 21-23, 2006 members meeting in Oregon), Urban breached the fiduciary duty he owed to BCS by failing to provide it (through Stirsman and Britton) with accurate financial information relative to the overall health of the business, and in particular to the SOT position with Key Bank. . . . Under the same facts, the arbitrator holds that BCS has established its claim on this issue for causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and intentional misrepresentation.

Award at 5.

The Award absolved Urban of any liability for the losses incurred by BCS before September 2006 other than the loss due to the SOT. The Award ruled that Urban's "breach of duty was intentional and caused damage to BCS in the amount of $697,000." The Award reduced that amount by $230,783, which represented Urban's 33.133 percent ownership interest in BCS, resulting in a net award of $466,216.[4] Award at 5.

Although BCS argued numerous post-2006 claims against Urban in the arbitration, and Urban asserted numerous cross-claims, the principal post-2006 claim against Urban was for his liability on a capital call. In April 2008, the members voted for a capital

---

[4] In calculating the award in the State Court Judgment, the state court granted BCS's request for interest on the $466,216 from November 9, 2006 to October 21, 2011 of $197,470.58, resulting in an award of $663,686.58 attributable to the alleged liability on the SOT. State Court Judgment at 2. Urban has not challenged the computation.

-5-

call of $600,000 to help with operating expenses. Stirsman and Britton made their capital call of $200,000 each, but Urban did not. The Award determined that at the time of the capital call, Urban had slightly less than one-third of the membership interest in BCS, so his liability to BCS was $198,666, which the Award granted to BCS.

The Award was confirmed, over Urban's objection, by the San Diego Superior Court on October 21, 2011 (the "State Court Judgment").[5] Based on the Award, the state court granted judgment to BCS for a total of $1,146,350.47 on their claims against Urban, of which $663,686.58 was allocated to Urban's breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and intentional misrepresentation. Urban, in turn, was granted a judgment of $160,502.41 against BCS on his cross-claims. The state court offset this amount from the total awarded to BCS against him and, as provided in the Award, awarded BCS a net total of $979,706 in damages against Urban, of which $663,686.58 was allocated to Urban's breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and intentional misrepresentation. The State Court Judgment was not appealed.

Urban filed a chapter 7 petition on February 2, 2012. On

[5] Unless it is necessary to distinguish between the Award and the State Court Judgment, we refer only to the Award. We are mindful that arbitration awards are not state court judgments as provided in the Full Faith and Credit Act, 28 U.S.C. § 1738. Burkybile v. Bd. of Educ., 411 F.3d306 (2d Cir. 2005). California requires a petition and action in state court to elevate an arbitral award to a judgment. See Cal. Code Civ. Proc. § 1285.

-6-

May 7, 2012, BCS filed a "Complaint for Determination of Nondischargeability of Debt under 11 U.S.C. Section 523(a)(2)(A), 523(a)(4), and 523(a)(6)" (the "Complaint") against Urban. BCS asserted that Urban's debt to BCS for the $663,686.58 component of the State Court Judgment should be excepted from discharge for intentional misrepresentation, fraud while acting in a fiduciary capacity, and willfully and maliciously misrepresenting financial information to Stirsman, Britton and Key Bank.

On June 21, 2012, BCS filed a motion for summary judgment (the "First SJM"). The First SJM argued that the bankruptcy court should apply issue preclusion and determine that Urban's debt to BCS based on the State Court Judgment was excepted from discharge. Urban opposed the First SJM, arguing that BCS had not presented the arbitration record, and that the arbitrator's rulings in the Award, upon which the State Court Judgment was based, were not sufficient to support any exception to discharge. Further, Urban argued that he was not permitted at the state court to assert that the offsets should be applied to his nondischargeable claims.

The bankruptcy court held a hearing on the First SJM on July 19, 2012. On July 30, 2012, the court entered an Order Denying Motion for Summary Judgment (the "First SJ Order"). In it, as to the BCS claim under § 523(a)(2)(A), the court determined that the Award did not make the requisite findings concerning Urban's intent to deceive BCS, and that the arbitrator's specific finding that Urban had engaged in gross negligence in managing BCS, rather than intentional deceit, prevented application of preclusion on the issue of fraud under

-7-

§ 523(a)(2)(A). First SJ Order at 4-5.

In addition, the bankruptcy court found numerous factual issues remained concerning whether the arbitrator's findings satisfied the standard for a defalcation exception under § 523(a)(4). The court cited to Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996) for the proposition that "defalcation can include the innocent default of a fiduciary who fails to account fully for money received." The court expressed concern regarding the § 523(a)(4) claim because "the award is unclear whether the alleged defalcation was due to [Urban's] flawed judgment by permitting BCS to go SOT, or causing bookkeeping errors from the shoddy records, or something more nefarious." First SJ Order at 6.

And as to the BCS claim for an exception to discharge under § 523(a)(6), the bankruptcy court determined that the arbitrator had found that Urban had committed a wrongful act (selling cars out of trust), but that there was no finding that Urban did so either willfully or maliciously.[6] First SJ Order at 6.

The bankruptcy court summarized that there were triable issues of fact regarding Urban's intent to deceive, whether Urban's breaches of fiduciary duty constituted nondischargeable defalcation, and whether Urban's claims against BCS should be offset against the dischargeable or nondischargeable components of BCS's claim. First SJ Order at 8.

BCS filed a second summary judgment motion on October 17,

---

[6] The bankruptcy court would later dismiss the § 523(a)(6) claim on stipulation of the parties, so it is not implicated in this appeal.

-8-

2012 (the "Second SJM"). BCS supported this motion with a mass of information, including all transcripts and the exhibits submitted in the arbitration proceedings. In the Second SJM, BCS argued that the arbitration record supported a finding that Urban committed intentional fraud, that Urban committed defalcation while acting in a fiduciary capacity, and that the offsets were determined by the state court. Thus, the State Court Judgment was entitled to preclusive effect.

Urban responded to the Second SJM on November 9, 2012. He argued that exception to discharge under § 523(a)(2)(A) was not justified for his alleged failure to disclose information concerning BCS's financial condition to BCS, that no § 523(a)(4) defalcation had been shown to have occurred, and that issue preclusion should not apply to the offset issue.

The bankruptcy court held a hearing on the Second SJM on November 29, 2012. At the hearing the bankruptcy court announced that it would grant summary judgment to BCS on the § 523(a)(2)(A) claim and would deny summary judgment on the § 523(a)(4) claim for defalcation. However, after the hearing, but before the court could enter an order on the Second SJM, on December 13, 2012, Urban filed a motion for reconsideration, bringing the Ninth Circuit's decision in Anastas v. Am. Savings Bank (In re Anastas), 94 F.3d 1280 (9th Cir. 1996), to the court's attention in support of his argument that § 523(a)(2)(A) prohibits use of a non-written representation of debtor's financial condition as a basis for finding fraud. The court was not persuaded by Urban's arguments based on In re Anastas and cited to other authority, to be discussed below.

On January 23, 2013, the bankruptcy court granted summary judgment to BCS that the debt owed by Urban for the $663,686.58 was excepted from discharge under § 523(a)(2)(A) and (a)(4) ("Second SJ Order"). In it, the bankruptcy court determined:

— The arbitration hearing was sufficiently adjudicatory to satisfy California's requirements for applying issue preclusion to arbitration awards.

— Based on the testimony reflected in the transcripts from the arbitration proceedings, the court found that Urban's concealment of financial information from BCS demonstrated his intent to deceive, and thus, supported the court's conclusion that Urban's debt to BCS was excepted from discharge under § 523(a)(2)(A).

— Since the court would give preclusive effect to both the fraud and fiduciary duty findings in the Award, the court would apply issue preclusion on the § 523(a)(4) claim.

— The nondischargeable debt would not be reduced for Urban's offsets, because the court should give preclusive effect to the offset calculation of the state court.

— Regarding Urban's objections to procedural rulings by the arbitrator, the bankruptcy court found that Urban's assertions were not supported by the evidence.

The bankruptcy court entered a Judgment on February 5, 2013. Also on February 5, 2013, the bankruptcy court entered an order denying reconsideration. Urban filed a timely appeal of the Judgment and reconsideration order on February 6, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C.

-10-

§§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in determining that issue preclusion was available, and whether it abused its discretion in choosing to apply it to the State Court Judgment.

Whether the bankruptcy court erred in granting summary judgment to BCS determining that Urban's debt was excepted from discharge under § 523(a)(2)(A) and (a)(4).

Whether the bankruptcy court abused its discretion in denying reconsideration.

**STANDARDS OF REVIEW**

We review an award of summary judgment de novo. Grenning v. Miller-Stout, 739 F.3d 1235, 1238 (9th Cir. 2014).

In reviewing a bankruptcy court's determination of an exception to discharge, we review its findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009).

The availability of issue preclusion is a question of law, which we review de novo. Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012). If issue preclusion is available, the decision to apply it is reviewed for abuse of discretion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007).

Reconsideration under Rule 9023 is reviewed for abuse of discretion. Determan v. Sandoval (In re Sandoval), 186 B.R. 490, 493 (9th Cir. BAP 1995).

A bankruptcy court abuses its discretion if it bases a

-11-

decision on an incorrect legal rule, or if its application of the law was illogical, implausible or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc).

**DISCUSSION**

Resolution of this appeal requires that the Panel apply several legal standards to the bankruptcy court's decision: summary judgment, issue preclusion, exception to discharge under § 523(a)(2)(A), and exception to discharge under § 523(a)(4). In particular, we must determine if the State Court Judgment, based on the Award, is entitled to preclusive effect and, if so, whether any disputed material facts remained which prevented the bankruptcy court from granting a summary judgment to BCS for an exception to discharge under either § 523(a)(2)(A) or (a)(4). As discussed below, we conclude that the Award is ambiguous, that several elements required for an exception to discharge based on issue preclusion have not been established, and that granting a summary judgment to BCS was not appropriate.

**I.  Summary Judgment and Issue Preclusion.**

Summary judgment may be granted by the trial court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Civil Rule 56(a), as incorporated by Rule 7056; Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). A trial court may not weigh the evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale

*Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).

Federal courts must give "full faith and credit" to the judgments of state courts. 28 U.S.C. § 1738. In determining whether a state court's judgment is preclusive in bankruptcy cases as a matter of full faith and credit, the bankruptcy court must apply the forum state's law of issue preclusion. *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994). Issue preclusion applies in the context of a § 523(a) proceeding. *Grogan v. Garner*, 498 U.S. 279, 286-291 (1991).

California courts apply issue preclusion only if several threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine. *Lucido v. Super. Ct.*, 51 Cal.3d 335, 342 (1990). The five threshold requirements mandated by the California courts include: (1) whether the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) whether the issue was actually litigated in the former proceeding; (3) whether the issue was necessarily decided in the former proceeding; (4) whether the decision in the former proceeding is final and on the merits; and, finally, (5) whether the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. *Id.* Even if all these requirements are met, to apply issue preclusion, a California court must consider whether any overriding concerns about the fairness of the former proceeding are present, and whether application of the doctrine is consistent with sound public policy. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006).

-13-

California courts may apply issue preclusion to findings made in an arbitration proceeding provided the arbitration proceeding was conducted in an adjudicatory manner. Kelly v. Vons Cos., 67 Cal. App. 4th 1329, 1335 (1998) (considering application of fraud and misrepresentation found in arbitration proceedings on later litigation among the participants). The BAP has given issue preclusive effect to California arbitral awards where the proceedings were adjudicatory in nature, and where the arbitration award has been confirmed by California courts. In re Khaligh, 338 B.R. at 382.

**II. The bankruptcy court erred in determining that issue preclusion was available, and granting summary judgment to BCS pursuant to § 523(a)(2)(A).**

**A. Fraudulent Concealment of Financial Information.**

In the First SJ Order, as to BCS's claim for a § 523(a)(2)(A) "actual fraud" exception to discharge, the bankruptcy court determined, as a matter of law, that the Award satisfied elements (2), (4) and (5) for application of issue preclusion, but that there remained factual disputes as to elements (1) identity of issues and (3) necessarily litigated.

In the Second SJ Order, the bankruptcy court determined that all of the elements for issue preclusion had been satisfied based on Urban's intentional misrepresentations. The court reached this conclusion by finding that the arbitrator had distinguished Urban's actions during two distinct time periods: between March 2005 and September 2006, when Urban had intentionally misrepresented BCS's overall financial health by concealing information from BCS and its members, and thereafter, where the arbitrator determined that Urban was grossly negligent in his

-14-

management of the BCS business.  Because the arbitrator allocated the damages caused by Urban during the earlier period of time, the bankruptcy court decided that the Award preclusively established the elements necessary for a § 523(a)(2)(A) discharge exception as to those damages.

We disagree with the bankruptcy court's conclusion.  In our view, Urban's concealment of information from BCS, even if undertaken with the requisite fraudulent intent, does not qualify for an exception to discharge under § 523(a)(2)(A), because the information he allegedly concealed concerned the financial condition of an insider.

Section 523(a)(2)(A) provides:

> (a) A discharge under section 727 . . .  does not discharge an individual debtor from any debt- . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

To establish a claim for an exception to discharge under this provision requires a creditor to demonstrate five elements by a preponderance of the evidence: (1) the debtor made representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. Ghomesh v. Sabban (In re Sabban), 600 F.3d 1219, 1221 (9th Cir. 2010); Siriani v. Nw. Nat'l Ins. Co. Of Milwaukee, WI (In re Siriani), 967 F.2d 302, 304 (9th Cir. 1992).

-15-

However, even assuming these elements are satisfied, a creditor will not be entitled to an exception under § 523(a)(2)(A) if the debtor's fraudulent representations consist of "statement[s] respecting the debtor's or an insider's financial condition . . . ." Heritage Pac. Fin., LLC v. Edgar (In re Montano), 501 B.R. 96, 102 (9th Cir. BAP 2013).

By its terms, a debt is not excepted from discharge for fraud based on non-written representations about the financial condition of the debtor or an insider of the debtor. The BAP recently examined the meaning of the term "financial condition" as it is used in § 523(a)(2)(A). Barnes v. Belice (In re Belice), 461 B.R. 564 (9th Cir. BAP 2011). In Belice, the Panel, after reviewing the case law and legislative history, interpreted the term narrowly:

> Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. . . . What is important is not the formality of the statement, but the information contained within it — information as to the debtor's or insider's overall net worth or overall income flow.

In re Belice, 461 B.R. at 578.

Here, the bankruptcy court granted summary judgment to BCS under § 523(a)(2)(A) because the arbitrator found, as recited in the Award, that "Urban breached the fiduciary duty he owed to BCS by failing to provide it (through Stirsman and Britton) with accurate financial information relative to the overall health of the business, and in particular to the SOT position with Key Bank. . . . Under the same facts, the arbitrator holds that BCS

has established its claim on . . . intentional misrepresentation." Award at 5 (emphasis added). In other words, giving a fair reading to the Award, the arbitrator found that Urban engaged in fraud by concealing information from BCS and its members regarding the "overall health" of BCS, an insider of Urban. See § 101(31)(A)(iv) (defining "insider" to include a corporation in which the debtor is a "director, officer, or person in control.") Clearly, had Urban not concealed information from his colleagues, but had instead lied to them about the "overall health of the [BCS] business," applying Belice, such would not be the kind of representations that would support an exception from discharge under § 523(a)(2)(A). We do not believe that, simply because Urban concealed the same sort of information from the members, that a different result should obtain.

Undoubtedly, a debtor's concealment of important facts and information from a creditor can qualify as a "false representation" for purposes of § 523(a)(2)(A). Citibank (S.D.) N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089 (9th Cir. 1996). At the hearing on November 29, 2012, the bankruptcy court challenged Urban to supply case law in support of his argument that debts arising from concealment of financial condition cannot be excepted from discharge under § 523(a)(2)(A). Urban's counsel was unable to provide any. At the time, the court responded that it also could locate no authority for that proposition. Id. at 24:14-15.

However, in his reconsideration motion filed before the bankruptcy court entered its order, Urban referred the court to a

-17-

discussion in the Ninth Circuit's decision in a different context in Anastas v. Am. Savings Bank (In re Anastas), 94 F.3d 1280 (9th Cir. 1996), to support his position:

> We emphasize that the representation made by [a] card holder in a credit card transaction is not that he has an ability to repay the debt; it is that he has an intention to repay. Indeed, section 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud.

Id. at 1286 (emphasis added in Urban's Op. Br. at 16). Urban also cited three bankruptcy cases in support of his argument, including one that was affirmed at the circuit level.

In Desert Palace, Inc. v. Baumblit, (In re Baumblit), 229 B.R. 50, 60-61 (Bankr. E.D.N.Y. 1999) aff'd in relevant part, 251 B.R. 442 (E.D.N.Y. 2000), aff'd 15 Fed. Appx. 30 (2d Cir. 2001), Baumblit was a gambler who executed a credit application and numerous markers with Caesar's casinos. The application and markers did not contain adequate information about his true financial condition. After he defaulted, Caesar's brought an exception to discharge claim in Baumblit's bankruptcy case under § 523(a)(2)(A). The bankruptcy court determined that the application and markers were not written statements of financial condition.

> Sections 523(a)(2)(A) and 523(a)(2)(B) clearly preclude reliance on unwritten representations respecting a debtor's financial condition as a basis for nondischargeability under section 523(a)(2)(A). A nondischargeability cause of action based on representations regarding the defendant's financial condition . . . must be brought under section 523(a)(2)(B), which provides for such a cause of action based on material written misrepresentations only. Caesars has not interposed a cause of action under section 523(a)(2)(B) and neither the Credit Application nor the Markers included a written statement of Baumblit's financial condition.

-18-

In re Baumblit, 229 B.R. at 60.

In Baker v. Sharpe (In re Sharpe), 351 B.R. 409, 425-26 (Bankr. N.D. Tex. 2006), Sharpe received several large loans from Baker. Sharpe represented to Baker that he had funds sufficient to payoff the loans, but that he was hiding those funds from his wife pending a divorce. When Sharpe failed to pay the loans and filed a bankruptcy petition, Baker sought an exception to discharge under § 523(a)(2)(A). The bankruptcy court found that Sharpe had given numerous implicit, nonverbal, assurances of his financial condition to Baker. However, the court dismissed Baker's § 523(a)(2)(A) claim because "Sharpe's concealment of his financial problems from Ms. Baker [] constitute[s] non-written statements concerning Mr. Sharpe's financial condition, which are [] not actionable under section 523(a)(2)(A)." Id. at 426.

In Gadtke v. Bren (In re Bren), 284 B.R. 681, 695 (Bankr. D. Minn. 2002), Bren was a building contractor who entered into a contract to build a house for Gadtke. During the course of construction, Bren and his company became insolvent, but still received periodic construction payments from Gadtke. In his later bankruptcy case, the bankruptcy court found that "Bren's failure to disclose his precarious financial situation [to Gadke] is at best an implied statement of his financial condition and excluded from the purview of § 523(a)(2)(A)." Id. at 695.

In the Second SJ Order, the bankruptcy court dismissed Anastas as dicta, something BCS now urges that this Panel also should do. BCS Op. Brief at 28 (arguing that Anastas is dicta in which "a debtor allegedly incurred debt without the intent to repay, and not, as in this case, where a partner with a fiduciary

-19-

duty fraudulently concealed information from his other partners and thus damaged the business."). We agree with the bankruptcy court and BCS that the statement cited by Urban in Anastas is dicta. However, we do not think the court's comments should be ignored. A bankruptcy court should not dismiss Ninth Circuit dicta without giving it respectful consideration as persuasive authority. Nw. Airlines, Inc. v. Camacho, 296 F.3d 787, 790 (9th Cir. 2002) (holding that, even though statements in a decision may be dicta, "we deem them persuasive when there is no directly controlling authority"). The court has also cautioned that it does not "lightly reconsider dicta, even if they do not bind us." Konop v. Haw. Airlines, Inc., 236 F.3d 1035, 1044 (9th Cir. 2001).

Rather than Anastas, the bankruptcy court opined that there was "more pertinent authority for the facts of this case that directly involve concealment of a financial condition," and cited to Haddad v. Haddad (In re Haddad), 21 B.R. 421 (9th Cir. BAP 1982), aff'd 703 F.2d 575 (9th Cir. 1983). Second SJ Order at 6. In that case, a surviving partner's concealment of the existence of partnership funds owed to his deceased partner's widow was held to be excepted from discharge under § 523(a)(2)(A). But under the definition of "financial condition" established later in In re Belice, we question whether In re Haddad is "more pertinent" to the issue in this case. In re Haddad concerned the concealment of a single fact about the partnership, the existence of the funds it owed to the ex-partner's wife. In that respect, we doubt the case concerned information about the "overall health" of the partnership's business and, thus, under

-20-

In re Belice, we question whether the concealment in Haddad involved a representation about the financial condition of the debtor, or its insider as is the case here. In re Belice, 461 B.R. at 571.

In summary, the arbitrator found in the Award that Urban committed an intentional misrepresentation when he concealed information about BCS's overall financial health from BCS and its members. In our view, even assuming this concealment constituted a "representation" for purposes of § 523(a)(2)(A), it was a non-written representation about BCS's financial condition and, therefore, would not support an exception to discharge under § 523(a)(2)(A). The bankruptcy court therefore erred when it relied upon this finding in the Award to determine BCS was entitled to a summary judgment.

### B. Intent to Deceive.

We have other concerns with the bankruptcy court's decision to grant BCS a summary judgment under § 523(a)(2)(A).

In its First SJ Order, the bankruptcy court determined that it was unclear whether the arbitrator found in the Award that Urban's actions were grossly negligent, or the product of an intent to deceive. We agree with that conclusion. However, the bankruptcy court reversed its position concerning Urban's intent in the Second SJ Order. It did so based on the "additional evidence" BCS provided, concluding that "there was ample evidence of the intent to deceive based on the testimony of Scott Biehl, David Stirsman and the Debtor himself" offered during the arbitration trial. Second SJ Order at 5. This approach to resolving the BCS summary judgment motion is problematic.

-21-

In its Second SJ Motion, BCS provided the bankruptcy court with the complete transcripts of the arbitral hearings, along with the exhibits.  In its motion, BCS cited to specific passages in the testimony of BCS witnesses Paul Brien (a Key Bank officer), Scott Biehl (a BCS accountant), Stirsman, and Britton, suggesting that the arbitrator and the bankruptcy court could infer that Urban had acted with the intent to deceive BCS. Additionally, BCS cited to various portions of Urban's testimony that tended, in BCS's view, to support that position as well.

Urban responded, pointing out aspects of each witness's testimony that he argued evidenced his lack of fraudulent intent. In short, in the Second SJ Motion and the parties' debate, the bankruptcy court was presented with a clear factual dispute between the parties regarding intent to deceive.[7]

It appears that the bankruptcy court examined the record and weighed the evidence, apparently crediting the testimony of Biehl and Stirsman, and discrediting that of Urban, in deciding whether Urban acted with an intent to deceive.  This is not appropriate at the summary judgment stage.  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." Oswalt v. Resolute Indus., 642 F.3d 856, 861 (9th Cir. 2011)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[7] The parties have not disputed the propriety of the bankruptcy court's examination of the witness testimony. Regardless of the appropriateness of consulting that record, it was clearly impermissible to weigh conflicting testimony and reach credibility determinations in the context of summary judgment. Anderson, 477 U.S. at 255.

-22-

242, 255 (1986)); see also McSherry v. Long Beach, 584 F.3d 1129, 1133 (9th Cir. 2009) (holding that when reviewing a grant of summary judgment, "all justifiable inferences are to be drawn in [nonmovant's] favor and his evidence is to be believed.").

Further, after our de novo review, we conclude that the Award is patently ambiguous in two respects regarding Urban's alleged intent to deceive BCS.

The Award states:

> Based on clear and convincing evidence, the arbitrator finds that from at least the time Millum separated from BCS (March 4, 2005 until the September 21-23, 2006 members meeting in Oregon), Urban breached the fiduciary duty he owed to BCS by failing to provide it (through Stirsman and Britton) with accurate financial information relative to the overall health of the business, and in particular to the SOT position with Key Bank. Further, that Urban breached his fiduciary duty to use his best efforts to keep a good relationship with Key Bank, and to avoid at all costs in going SOT. The arbitrator finds this breach of duty was intentional and caused damage to BCS in the sum of $697,000. . . . Under the same facts, the arbitrator holds that BCS has established its claim on this issue for causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and intentional misrepresentation.

Award at 19.

The first ambiguity in the Award relates to the two sentences regarding fiduciary breach. Compare:

> Urban breached the fiduciary duty he owed to BCS by failing to provide it (through Stirsman and Britton) with accurate financial information relative to the overall health of the business, and in particular to the SOT position with Key Bank.

with

> Urban breached his fiduciary duty to use his best efforts to keep a good relationship with Key Bank, and to avoid at all costs in going SOT.

Immediately after the second sentence, the Award attributed

-23-

damages to:

> This breach of duty was intentional and caused damage to BCS in the sum of $697,000.

The ambiguity arises over the term "this" breach of duty. The Award found a breach of duty in relation to BCS for concealment of financial condition and apparently a different breach of duty relating to his management duties on behalf of BCS to the bank and going SOT. Although the first might be a possible grounds for denial of discharge under § 523(a)(2)(A), the latter is not. Further, the second sentence immediately precedes the sentence referring to "this" duty, so one might infer that the breach of duty that caused the damages was in Urban's management duties in relations with the bank.

We conclude that, on its face the Award is ambiguous whether the damages awarded to BCS in the Award relate to Urban's breach of fiduciary duty regarding the relationship with Key Bank, or to the earlier (more remote) reference to his breach of fiduciary duty to provide financial information to BCS. Thus, there is a material question arising from this ambiguity whether the breach of duty in the Award attributed damages to concealment or management duties. To the extent that there was any reasonable doubt as to the meaning of "this" breach, in the summary judgment context, that ambiguity should have been resolved in Urban's favor. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011) (The movant for summary judgment must "introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment

-24-

should be resolved against allowing the collateral estoppel effect.").

Because the bankruptcy court could not appropriately rely upon the conflicting testimony of the arbitration trial witnesses, and because the Award is ambiguous concerning Urban's alleged fraudulent intent, a disputed question of material fact exists whether BCS is entitled to a § 523(a)(2)(A) exception to discharge for fraud.

### C.    Justifiable Reliance

The bankruptcy court did not discuss how the Award established that BCS, through Stirsman and Britton, had justifiably relied to its detriment upon Urban's alleged fraud. Based upon our review of the record, we conclude there are unanswered questions about whether BCS justifiably relied on Urban's concealment of its own financial conditions as a basis for a summary judgment.

Section 523(a)(2)(A) requires a finding that a creditor justifiably relied on a debtor's false statements or misrepresentations. Field v. Mans, 516 U.S. 59, 74-75 (1995). Justifiable reliance is measured under a subjective standard, which turns on a person's knowledge under the particular circumstances. In re Eashai, 87 F.3d at 1090. "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. (quoting Field, 516 U.S. at 70). Therefore, the inquiry regarding the justifiable standard focuses on "whether the falsity of the representation was or should have been readily

-25-

apparent to the individual to whom it was made." Beneficial Cal., Inc. v. Brown (In re Brown), 217 B.R. 857, 863 (Bankr. S.D. Cal. 1998) (citations omitted).

The justifiable reliance standard generally does not entail a duty to investigate; a person may be justified in relying on a representation even if he might have ascertained the falsity of the representation had he made an investigation. See Field, 516 U.S. at 70. However, a duty to investigate is imposed on a creditor by virtue of suspicious circumstances. Id. at 71. Thus, "justifiable reliance does not exist where a creditor ignores red flags." In re Anastas, 94 F.3d at 1286. "[A] person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth." In re Eashai, 87 F.3d at 1090-91.

Notably, the Award concludes that Stirsman and Britton could not "reasonably rely" on Urban's representations after September 2006. But the Award is silent on how two, in the Award's words, "experienced executives in the auto industry" could justifiably rely on Urban's concealment of information about BCS's financial condition before September 2006. Absent a finding that they did, the Award was not adequate to establish justifiable reliance. We therefore conclude that the bankruptcy court erred when it decided that the Award preclusively established that BCS justifiably relied on Urban's alleged fraudulent concealment of financial information for purposes of § 523(a)(2)(A).

### D. Proximate Cause and Damages

The fifth element for exception to discharge under § 523(a)(2)(A) is that BCS must have sustained the alleged loss

-26-

and damage as the proximate result of the misrepresentations having been made. In re Sabban, 600 F.3d at 1221. Proximate cause under § 523(a)(2)(A) requires a finding by the court that there was (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." Burks v. Bailey (In re Bailey), 499 B.R. 873, 891 (Bankr. D. Idaho 2013); Beneficial Cal., Inc. v. Brown (In re Brown), 217 B.R. 857, 862 (Bankr. S.D. Cal. 1998); Restatement (Second) of Torts, §§ 546, 548A) ("A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.").

We find nothing in this record to show that Urban's concealment of financial information resulted in any particular damages to BCS. Indeed, there is no reference in, nor inference to be drawn from, the Award regarding this question. The absence of findings concerning the proximate cause and damages question is puzzling in light of the plausible argument made by Urban to the bankruptcy court that there was, actually, no harm or loss suffered by BCS caused by his conduct.

Recall, the arbitrator's damage award to BCS was based on the amount needed to satisfy BCS's SOT condition in 2006. However, it appears undisputed that BCS experienced this condition when Urban, faced with a shortage of revenues, used BCS's limited funds that could have been paid to Key Bank to pay

the claims of vendors and other creditors to keep BCS in business. In other words, that BCS was SOT did not result because funds were available to pay the bank that Urban diverted to other, inappropriate uses. The SOT condition apparently resulted from BCS's lack of revenues to pay both its operating expenses and the Key Bank loan.

In summary, the Award did not preclusively establish that Urban's alleged fraud proximately caused damages to BCS. It was therefore error for the bankruptcy court to grant summary judgment on this point.

**III. The bankruptcy court erred in granting summary judgment to BCS pursuant to § 523(a)(4).**

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" For several reasons, we disagree with the bankruptcy court's decision that the Award preclusively established the elements for such an exception to discharge.

First, in its Second SJ Order, the bankruptcy court, quoting Bugna, listed the elements of a claim under § 523(a)(4): "There are two issues under section 523(a)(4): whether the debtor incurred the debt by committing fraud or defalcation, and whether the fraud was in relation to the debtor's fiduciary responsibilities." Bugna, 33 F.3d at 1057. However, the most recent statement on these elements was in Mele v. Mele (In re Mele), 501 B.R. 357 (9th Cir. BAP 2013), where the Panel instructed that:

> A debt is excepted from discharge under § 523(a)(4) where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted

-28-

as a fiduciary to the creditor at the time the debt was created." Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997).

Id. at 363.

Urban argues that the bankruptcy court failed to make any determination that the necessary trust elements of § 523(a)(4) were established in the Award. BCS counters that this is a new issue on appeal and the Panel should not consider it. But since the trust relationship is a required element for an exception to discharge, we can appropriately review the bankruptcy court's ruling on this point. Doing so, we conclude that the bankruptcy court properly found that the requisite trust did exist between Urban and BCS.

State law defines the trust relationships. Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186 (9th Cir. 2001). "Under California law, the fiduciary duties a manager owes to the limited liability company and its members are the same as those of a partner to a partnership and to the partners of the partnership." Cal. Corp. Code § 17153. Cal. Corp. Code § 16404 makes all partners trustees over the partnership assets; Ragsdale, 780 F.2d at 796. Under the Operating Agreement, as amended, Urban was a member-manager of BCS. We therefore conclude that the bankruptcy court had a sufficient basis to conclude that a statutory trust existed between Urban, BCS, Stirsman and Britton, and consequently that Urban owed a fiduciary duty to them in the management of the BCS business.

We next review whether the record established that Urban engaged in fraud or defalcation while acting in his fiduciary capacity.

-29-

The bankruptcy court in the First SJ Order reasoned that the Award was unclear, and therefore not preclusive, as to BCS's § 523(a)(4) claim. Then, at the hearing on July 29, 2012, on the Second SJM, and before entering its Second SJ Order, the bankruptcy court announced that it would deny summary judgment on the § 523(a)(4) claim for defalcation. Before the court could enter an order on the Second SJM, Urban filed a motion for reconsideration. The bankruptcy court then granted BCS summary judgment on its § 523(a)(4) claim for fraud by a fiduciary in the Second SJ Order. We think this was error.

During the pendency of this appeal, on May 13, 2013, the U.S. Supreme Court decided Bullock v. BankChampaign, N.A., 133 S. Ct. 1754 (2013). The Bullock decision abrogated the Ninth Circuit's previous intent standard and instructed that the necessary state of mind for a § 532(a)(4) defalcation is "one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274, 278 (9th Cir. BAP 2013) (quoting Bullock, 133 S. Ct. 1754, 1758 (2013)). At oral argument before the Panel, BCS's counsel was asked if a Bullock-like "culpable state of mind" required to show a defalcation by a fiduciary also applied to fraud by a fiduciary under § 523(a)(4). Counsel conceded that it did, and we agree with this conclusion.

Although Bullock analyzed only defalcation by a fiduciary under § 523(a)(4), it did not distinguish between fraud and defalcation by a fiduciary. However, the decision discussed the history of the exception to discharge now codified in § 523(a)(4) and observed that the "linquistic neighbors" of defalcation —

-30-

larceny and embezzlement — have always required felonious intent. The Court also noted that "'Fraud' must require an equivalent showing." Bullock, 133 S. Ct. at 1761 (citing to Neal v. Clark, 95 U.S. 704, 709 (1878)). Therefore, under the noscitur a sociis rule, the Supreme Court decided that, for an exception to discharge, a defalcation, like fiduciary fraud, larceny and embezzlement, required a culpable state of mind. We therefore confidently conclude that a culpable state of mind is also required to establish fraud by a fiduciary under § 523(a)(4).

Of course, there is nothing in the Award to show that Urban had the requisite mental state to satisfy the heightened requirements in Bullock. Indeed, the Award noted that, "It is apparent — and the evidence here is overwhelming — that Urban was in over his head . . ." and that "Urban was overworked in trying to be the head of operations and finance. This is not to excuse his performance, because the arbitrator is convinced that many of his actions constituted at least gross negligence." Award at 21. The arbitrator also explicitly denied BCS's demand for punitive damages and found that Urban had not engaged in embezzlement. Award at 20. At the very least, these comments in the Award raise a question of fact if Urban had the culpable state of mind required by the Supreme Court for exception to discharge under § 523(a)(4)

In the Second SJ Order, the bankruptcy court found that the Award established that Urban engaged in actual fraud and a breach of fiduciary duty for purposes of § 523(a)(2)(A), and that the fraud in § 523(a)(4) is the same as actual fraud in § 523(a)(2)(A). Therefore, the court concluded, the Award

-31-

adequately established an exception to discharge under § 523(a)(4).

Of course, even if "actual fraud" under (a)(2)(A), and fraud by a fiduciary under (a)(4) are the "same," as the Panel has held, intent to deceive and justifiable reliance are also elements of proof of fraud in § 523(a)(4):

> "Fraud" under § 523(a)(4) means actual fraud. Roussos v. Michaelides (In re Roussos), 251 B.R. 86, 91 (9th Cir. BAP 2000) (citing Bugna, 33 F.3d at 1057). Actual fraud involves conscious misrepresentation, or concealment, or non-disclosure of a material fact . . . . To prove actual fraud the plaintiff must prove: 1) defendant made a misrepresentation, concealment, or non-disclosure of a material fact; 2) defendant had knowledge that what he was saying was false; 3) defendant intended to induce plaintiff's reliance; 4) plaintiff justifiably relied; and 5) plaintiff suffered damage as a result.

In re Honkanen, 446 B.R. at 382-83.

Because, as discussed above, there are remaining fact questions regarding Urban's intent to deceive BCS, and BCS's justifiable reliance on Urban's action, there remain questions of material fact that prevent summary judgment as to § 523(a)(4).

**IV. The bankruptcy court did not abuse its discretion in applying issue preclusion to the allocation of offsets.**

Urban argues in this appeal that whether his claim ought to be offset against any alleged nondischargeable claim BCS holds against him was never actually litigated. The State Court Judgment offset the amount of Urban's award from his cross-claims of $160,140.69, against the total judgment awarded to BCS, resulting in a total BCS award of $979,705.78. However, the State Court Judgment did not offset his cross-claim award against the $663,686. Urban argues that, because of this, the bankruptcy

court should have independently reviewed his offset rights.

For issue preclusion to apply, an issue must be fully litigated in another tribunal. However, as the bankruptcy court correctly pointed out, the Ninth Circuit, for policy reasons, has determined that the source tribunal's allocation of the amount of debt is final, and another court, in applying issue preclusion, should decline to allow allocation issues to be relitigated. Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 872 (9th Cir. 2005) ("The classic example of the proper use of issue preclusion in discharge proceeding is when the amount of the debt has been determined by the state court and reduced to judgment. In that event, if there are no new issues, the bankruptcy court should ordinarily decline to allow the parties to relitigate the debt amount and should give the state court judgment as to the amount of preclusive effect.").

We conclude that the bankruptcy court correctly decided to give preclusive effect to the amounts of debt owed by Urban to BCS, and to the allocation of the damages awarded in the State Court Judgment. Urban did not appeal the State Court Judgment, and should not be heard now to object to the offsets.[8]

---

[8]   The award made to Urban was predominantly for his contract cross-claims (salary and vacation pay, reimbursement of loans) against BCS, and it was applied in the State Court Judgment to what was mostly the contract-based portion of the BCS award (the capital call award, prevailing party attorney fees). In other words, the State Court Judgment offset similar contract claims, and left the tort award of $663,686.58 intact. We discern no bankruptcy implications from this approach.

**V.  The bankruptcy court did not err in concluding that the Award was sufficiently adjudicatory to apply issue preclusion.**

Under California's law of preclusion, if a court determines that issue preclusion is available, the court must still make a determination that application of the doctrine is in the public interest.  A critical, indeed mandatory, component of that determination in this context is whether the subject arbitral proceeding was adjudicatory.  <u>Kelly v. Vons Cos.</u>, 67 Cal. App. 4th 1329, 1335 (1998).  To aide in this review, the Panel has summarized the essential elements of "adjudication" in California tribunals:

    (a)   Adequate notice to persons who are bound by the adjudication;

    (b)   The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

    (c)   A formulation of issues of law and fact in terms of the application of rules with respect to specific parties concerning a specific transaction, situation, or status, or a specific series thereof;

    (d)   A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

    (e)   Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

<u>In re Khaligh</u>, 338 B.R. at 830.

In this case, the bankruptcy court noted that it had reviewed the complete transcripts and exhibits of the Award

-34-

proceeding. The arbitration record disclosed that both parties engaged in extensive discovery, including the deposition of witnesses. The parties each had the power to subpoena witnesses. And after the Award was final, Urban did have an opportunity to oppose entry of the State Court Judgment, and he did. He declined, however, to appeal the State Court Judgment when his arguments about alleged procedural errors in the arbitration were rejected by the state court.

Urban has never complained that he had inadequate notice of the proceedings. The bankruptcy court was also aware that the arbitral proceedings were conducted by a retired Justice of the California Court of Appeals, who is presumably conversant with California state procedural rules. The bankruptcy court found that, based on its review of the transcript record, Urban's procedural objections were not supported. Although Urban complained that he did not have enough time to present his witnesses, his counsel asked for and received additional time during the proceedings. And although Urban complains in this appeal that he did not have the opportunity to cross-examine two witness who submitted depositions, Urban has not clearly articulated what he expected to elicit from those cross-examinations.

Under these circumstances, the bankruptcy court did not abuse its discretion in concluding that the arbitration proceedings were sufficiently adjudicatory, and that public policy was not offended by application of issue preclusion to the Award and State Court Judgment.

**VI. Urban's reconsideration motion was not argued on appeal.**

Although Urban listed the bankruptcy court's order denying his reconsideration motion on his notice of appeal, neither party has raised any arguments concerning that order in this appeal, and any challenges Urban may have to the order are waived. Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir. 1995).

However, to the extent that Urban suggests that the bankruptcy court erred when it changed its oral ruling before entry of its final order, we conclude that the bankruptcy court did not abuse its discretion. Neither party has relied upon the bankruptcy court's oral rulings, as opposed to its final order. A bankruptcy court, as a court of equity, has the inherent power under § 105(a) to change an oral ruling in the final order, provided there was no reliance by the parties. Meyer v. Lenox (In re Lenox), 902 F.2d 737, 739 (9th Cir. 1990). The equitable power to change its ruling arises under § 105(a). Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 940 (9th Cir. 2007).[9]

**CONCLUSION**

The bankruptcy court erred in deciding that the Award should be given preclusive effect in granting a summary judgment in favor of BCS against Urban under §§ 523(a)(2)(A) and (4). We

---

[9] Of course, the gravamen of Urban's position in the reconsideration motion was that the bankruptcy court erred in granting summary judgment to BCS on its § 523(a)(2)(A) claim. Because, on the merits, we have decided to vacate that order, our refusal to address the order denying the reconsideration motion is of no consequence to Urban.

therefore VACATE the bankruptcy court's order granting summary judgment and REMAND this matter to the bankruptcy court for further proceedings consistent with this Memorandum.