**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEIL GRENNING,
*Plaintiff-Appellant*,

v.

MAGGIE MILLER-STOUT; JIM
DYSON; FRED FOX, sued in their
individual and official capacities,
*Defendants-Appellees*.

No. 11-35579

D.C. No.
2:09-cv-00389-
JPH

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
March 5, 2013—Seattle, Washington

Filed January 16, 2014

Before: Ferdinand F. Fernandez, William A. Fletcher,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge W. Fletcher;
Dissent by Judge Rawlinson

## SUMMARY[*]

### Prisoner Civil Rights

The panel reversed the district court's summary judgment and remanded in a 42 U.S.C. § 1983 action brought by a Washington state prisoner who alleged that the continuous twenty-four-hour illumination of his cell violated the Eighth Amendment.

The panel held that there were material issues of fact as to (1) the brightness of the continuous lighting in plaintiff's Special Management Unit cell, (2) the effect on plaintiff of the continuous lighting, and (3) whether the defendant officials were deliberately indifferent. The panel held that even if it were possible for a defendant to defeat an Eighth Amendment conditions of confinement claim at summary judgment by showing a legitimate penological interest, defendants failed to make such a showing in this case. The panel held that on remand the district court should consider the issue of qualified immunity in the first instance. The panel also determined that on remand, the district court should consider in the first instance plaintiff's request that prison officials not garnish more than 20% of his prison account at a time in order to pay his court fees.

Dissenting, Judge Rawlinson stated that the record supported affirming the grant of summary judgment in favor of the prison officials on the basis of qualified immunity because it would not be clear to a reasonable prison official

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that reliance on the proffered justifications for the use of constant illumination in the Special Management Unit would violate the Eighth Amendment.

## COUNSEL

Hunter Olds Ferguson (argued), Leonard J. Feldman, Stoel Rives, LLP, Seattle, Washington, for Plaintiff-Appellant.

Candie M. Dibble, Joseph T. Edwards, Kevin Clarke Elliott (argued), Office of the Attorney General, Spokane, Washington, for Defendants-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Neil Grenning appeals a grant of summary judgment in favor of defendant prison officials. Grenning contends that continuous twenty-four-hour illumination of his cell violated the Eighth Amendment. We reverse and remand for further proceedings.

### I. Background

Neil Grenning is a Washington State inmate at Airway Heights Corrections Center ("Airway Heights"). Prison staff placed Grenning in the Special Management Unit ("SMU") of Airway Heights "pending investigation" into a fight "that he was allegedly involved in." Grenning was kept in the SMU for about thirteen days.

The SMU is an administrative segregation unit with single-inmate cells that are continuously illuminated for twenty-four hours a day. Each cell in the SMU has three four-foot-long fluorescent lighting tubes in a mounted light fixture. A cell occupant can use a switch inside the cell to turn off two of the tubes. However, the center tube is always on. The center tube is covered by a blue light-diffusing sleeve.

Terry Propeck, a correctional unit supervisor, provided a declaration describing practices in the SMU. Propeck's term for inmates kept in the SMU is "offenders." Propeck states, "Offenders housed in the SMU are considered a high risk to staff, other offenders, and themselves. Some offenders are placed in SMU pending an investigation into an incident that the offender was involved in." Some inmates are placed in SMU because they request protective custody. Institution policy requires welfare checks in the SMU to be conducted every thirty minutes, which is more frequent than checks for the general prison population.

According to Propeck, continuous illumination allows officers to "assess[] the baseline behavior of offenders to ensure they are not at risk of harming themselves or making an attempt to harm staff, cause property damage or incite problem behavior from other offenders." Propeck states that turning the cell lights on and off every thirty minutes would be disruptive to the cell occupants. Further, turning the lights on and off also might endanger staff because guards would be unable to see into the cell until they were immediately in front of it and had turned on the light. Turning lights on and off would also alert inmates to staff presence. Finally, Propeck states, "If an emergency occurred necessitating keeping the lights on for a prolonged period of time, this

could cause a disruption in the unit and frustrate or cause anxiety for offenders as opposed to having the light on as a norm."

Grenning filed a verified complaint alleging that the continuous lighting in his SMU cell violated the Eighth Amendment. Grenning alleges that the light was so bright he could not sleep, even with "four layers of towel wrapped around his eyes." He alleges that the lighting gave him "recurring migraine headaches" and that he could not distinguish between night and day in the cell. Grenning also alleges that the lighting caused him pain and disoriented him.

There is no evidence that Grenning sought medical assistance while in the SMU. However, he did submit a grievance informing prison officials that he could not sleep and that he had headaches as a result of the continuous lighting. He requested that prison officials replace the center tube with something that would give off less light.

The district court granted summary judgment in favor of Defendants, holding that Grenning had not established an Eighth Amendment violation. Grenning timely appealed.

## II. Standard of Review

We review a grant of summary judgment de novo. Summary judgment is appropriate when, "with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009).

### III. Discussion

### A. "Physical Injury" Requirement of the PLRA

Defendants argue that Grenning's claim is barred by a requirement of the Prison Litigation Reform Act ("PLRA") that a prisoner have suffered a physical injury. The language of the relevant section provides:

> (e) Limitation on recovery
>
>> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .

42 U.S.C. § 1997e(e). This section does not bar Grenning's case because he does not seek recovery for "mental or emotional injury." *See Oliver v. Keller*, 289 F.3d 623, 629 (9th Cir. 2002) ("[Section] 1997e(e) applies only to claims for mental and emotional injury."). He alleges various forms of physical injury and discomfort, and he seeks a declaratory judgment stating that the continuous lighting violated the Eighth and Fourteenth Amendments, an injunction preventing Defendants from continuing their lighting policy, compensatory damages, and "other relief as it may appear that plaintiff is entitled."

### B. Eighth Amendment

To prove an Eighth Amendment violation based on prison conditions, a prisoner must satisfy a two-part test. The

objective part of the test requires a showing that the defendants deprived the plaintiff of the "minimal civilized measure of life's necessities." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks and citations omitted). The subjective part requires a showing that the defendants "acted with 'deliberate indifference' in doing so." *Id*.

We have held that continuous lighting can satisfy the objective part of the test. "Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment. Moreover, there is no legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (alterations, internal quotation marks, and citations omitted), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). Keenan alleged in his verified complaint that the continuous lighting caused him "grave sleeping problems," and that it was so bright that he "had no way of telling night or day." *Id.* at 1091. The state submitted an affidavit stating that an inmate could sleep with the twenty-four-hour lighting. We held that Keenan had presented enough evidence to show a disputed issue of material fact. *Id*.; *see also LeMaire v. Maass*, 745 F. Supp. 623, 636 (D. Or. 1990), *vacated*, 12 F.3d 1444 (9th Cir. 1993) (vacated in part because state agreed to modify lighting policy, *see id.* at 1459); *cf. Chappell v. Mandeville*, 706 F.3d 1052, 1057–58 (9th Cir. 2013) (finding officials entitled to qualified immunity for Eighth Amendment lighting claim by prisoner on contraband watch who did not claim sleep deprivation).

A showing of deliberate indifference, under the subjective part of the test, requires a showing that the defendant knew of an excessive risk to inmate health or safety that the defendant deliberately ignored. *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000). Whether an official possessed such knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id*. (internal quotation marks omitted). Knowledge of a risk of harm can be inferred where that risk is "obvious," but prison officials are not liable if they respond reasonably to the risk. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## C. Evidence in the Record

To show that the continuous lighting violated the objective part of the test, Grenning filed a verified complaint alleging that the SMU lighting was so bright he could not sleep and that it gave him recurring migraines. He alleges that he could not distinguish between night and day in the cell. Finally, he alleges that the continuous lighting caused pain and disorientation.

The only evidence concerning the brightness of the SMU cells submitted by Defendants is a report and a declaration by Airway Heights Electrician Supervisor Steve McCallum. McCallum states in his report that he performed light meter readings in two SMU cells, using two meters in each cell. In one cell, the readings with the blue sleeve in place were 9.99 foot-candles using one meter, and 11.16 foot-candles using the other. The distance from bunk to light fixture was seven feet four inches. In the other cell, the light meter readings with the blue sleeve in place were 10.9 foot-candles and 12.4

foot-candles. The "[d]istance from bunk to light fixture" was seven feet.

McCallum does not state in his report that he did his light meter readings at bunk level; but we may infer that he did so, for otherwise his measurements would be useless for purposes of this suit. McCallum also does not state in his report that he did his light meter reading with only the center tube turned on; but we may again infer that he did so, for otherwise his measurements would be useless. Finally, McCallum does not state in his report that he did his measurements in the particular SMU cell that Grenning occupied.

In his sworn declaration, almost certainly prepared for him by Defendants' attorneys, McCallum states:

> I performed a light meter test in a standard SMU cell on July 8, 2010. A light meter test of a standard SMU cell indicates that without the blue sleeve there is a reading of 17.5 foot candles. With the blue sleeve installed the meter reads 9.99 foot candles.

McCallum does not mention in his sworn statement that another measurement in the same cell was 11.16 rather than 9.99 foot-candles. Nor does he mention that measurements, in tests performed on the same day in another SMU cell, were 10.9 and 12.4 foot-candles. Further, McCallum does not say in his sworn statement how he determined that the cell with the 9.99 to 11.16 foot-candle measurements, rather than the cell with the 10.9 to 12.4 foot-candle measurements, is "a standard SMU cell." Again, McCallum does not say that

either of the two SMU cells in which he performed the tests was the particular SMU cell that Grenning occupied.

We are unable to determine from this record how bright the lighting in Grenning's cell actually was. There are problems with McCallum's report and declaration, as just described. There is also nothing in the record to give us a clear idea of what a foot-candle measurement means in practical terms. Grenning put unverified third-party Internet documents into the record, but no other declarations or testimony were put in the record. Grenning's documents tell us that a foot-candle is the amount of light received by one square foot of surface from a candle one foot away from the surface area. However, without further specifications regarding the actual luminous intensity of the point source, that does not advance our understanding of the evidence. While we could speculate about whether a point source of the stipulated luminosity one foot away from a prisoner's face would seriously interfere with his sleep, on this limited record that would be inappropriate.

To show that Defendants were aware of prisoners' complaints about the continuous lighting in the SMU, Grenning put into evidence not only his own grievance, but also fifteen grievances about the SMU lighting from other inmates. Defendants contend that legitimate penological interests justify the continuous lighting in SMU cells, and that they responded reasonably to the risk of harm presented by that lighting. The precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement. The Supreme Court has written that the test of *Turner v. Safley*, 482 U.S. 78 (1987), which requires only a reasonable relationship to a legitimate penological interest to justify

prison regulations, does not apply to Eighth Amendment claims. *Johnson v. California*, 543 U.S. 499, 511 (2005) ("[W]e have not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison. We judge violations of that Amendment under the 'deliberate indifference' standard, rather than *Turner*'s 'reasonably related' standard. This is because the integrity of the criminal justice system depends on full compliance with the Eighth Amendment.") (internal citations omitted). The existence of a legitimate penological justification has, however, been used in considering whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth Amendment purposes. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976))). In both *Chappell*, 706 F.3d at 1058, and *Keenan*, 83 F.3d at 1090, we referred to possible legitimate penological interests when considering allegations that continuous lighting violated the Eighth Amendment.

Even if it were possible for a defendant to defeat an Eighth Amendment conditions of confinement claim at summary judgment by showing a legitimate penological interest, Defendants have failed to make such a showing in this case. The record shows that an individual may be placed in the SMU for a number of reasons, including reasons that do not appear to support a blanket policy of continuous lighting. There are several possible reasons for placing an inmate in segregation at Airway Heights: "Threat to Others," "Threat to Self," "Threat to Security," "Threat to Orderliness of Facility," and "Other." The paperwork in Grenning's case indicates that he was placed in the SMU, "pending investigation of an assault," under the heading of "Threat to

Orderliness of Facility[.]"   So far as the record shows, Grenning could have been placed in the SMU because he attacked someone, because he was a victim of an attack, or because he was an innocent bystander caught up in a melee. There is thus no indication that Defendants' proffered justifications for constant illumination were relevant to Grenning.

Defendants contend that they were not deliberately indifferent because they relied on a 1996 district court decision upholding continuous lighting.   However, Defendants are unable to tell us about either the factual circumstances or the reasoning of the court in that case, and have not included a copy of the case in the record.  It is thus impossible for us to determine, even if a decision of that court were binding law, whether the continuous lighting in this case would have been constitutional in the view of that court.

Defendants further contend that the lighting in Grenning's SMU cell was "accredited" by the American Correctional Association ("ACA").  McCallum states in his declaration:

> In 2007, the lighting in the cells at [Airway Heights Correctional Center ("AHCC")] was tested for compliance by the American Correctional Association (ACA).  I was involved with the testing protocols.  The lighting in the cells at AHCC passed the national accreditation standards of the ACA during the testing in 2007.

We are unable to determine from McCallum's statement the significance of the "accreditation" by the ACA.  We are not informed of the standards of the ACA, nor are we informed

about the thoroughness of the testing performed at Airway Heights.  Notably absent from McCallum's statement, for example, is a description of the ACA's standard for continuous lighting in cells, and any statement that the lighting in the SMU cells was tested.

We conclude, based on the foregoing, that there are material issues of fact remaining as to the brightness of the continuous lighting in Grenning's SMU cell, as to the effect on Grenning of the continuous lighting, and as to whether the defendant officials were deliberately indifferent.

## D. Qualified Immunity

The district court did not consider the question of qualified immunity because it granted summary judgment to Defendants on the merits.  We leave the issue of qualified immunity for the district court to determine in the first instance on remand.  *See Price v. Hawai'i*, 939 F.2d 702, 707 (9th Cir. 1991).

If the district court finds for Grenning on the merits of his Eighth Amendment claim, and if it finds that Defendants are entitled to qualified immunity, Grenning may still be entitled to injunctive relief.  *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989).  It is obvious from the record before us that prisoners at Airway Heights may be placed in the SMU for many reasons, and, so far as the record shows, Grenning is likely to remain a prisoner at Airway Heights for a sustained period.  It thus appears that there is sufficient likelihood of Grenning being again confined in the SMU to preserve his claim for injunctive relief.  *Cf. City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983) (finding injunctive relief inappropriate where

plaintiff could not show sufficient likelihood he would be subject to Los Angeles Police Department choke-hold policy in the future).

## E. Filing Fees Deductions

Grenning has asked us to hold that prison officials at Airway Heights may not garnish more than 20% of his prison account at a time in order to pay his court fees. The district court granted Grenning in forma pauperis status in this case. Airway Heights then began withholding 20% of Grenning's monthly income to pay his court fees pursuant to the PLRA. 28 U.S.C. § 1915(b). When Grenning appealed to this court, we also granted in forma pauperis status. Airway Heights then reduced Grenning's income by an additional 20%.

Grenning has sought a ruling from us that would allow Airway Heights to garnish only 20% of his income per month, a method called the "sequential" or "per prisoner" approach. *See Torres v. O'Quinn*, 612 F.3d 237, 242–48 (4th Cir. 2010). Defendants argue that Airway Heights can bill Grenning 20% per case, a method termed the "simultaneous" or "per case" approach. *Id*. The district court has not had the opportunity to consider this issue. We think it appropriate for the district court to consider it in the first instance.

## Conclusion

We reverse the summary judgment granted to Defendants and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the majority's failure to rule on the issue of qualified immunity in this case. We may affirm the district court's decision "on any ground supported by the record." *Serrano v. Francis*, 345 F.3d 1071, 1076–77 (9th Cir. 2003). And the record in this case supports affirming the grant of summary judgment in favor of the prison officials on the basis of qualified immunity. *See id.*

I agree that constant illumination of an inmate's sleeping quarters may constitute a serious deprivation of the right to shelter guaranteed by the Eighth Amendment in some circumstances. *See Keenan v. Hall*, 83 F.3d 1983, 1090–91 (9th Cir. 1996). However, before denying qualified immunity to prison officials, we must determine whether the party asserting the injury has sufficiently alleged a constitutional violation, *and* whether the right violated was clearly established. *See Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003). "[C]learly established means that it would be clear to a reasonable [prison official] that his conduct was unlawful *in the situation he confronted*." *Id.* (citation and internal quotation marks omitted) (emphasis in the original).

We recently held that constant illumination of an inmate's cell is unconstitutional only if no penological justification is provided for such illumination. *See Chappell v. Mandeville*, 706 F.3d 1052, 1057–58 (9th Cir. 2013). We distinguished *Keenan*, the case relied on by Plaintiff Neil Grenning. We emphasized that "*Keenan* did not clearly establish that constant illumination violates the Eighth Amendment when done for a legitimate penological purpose." *Id.* at 1058. Rather the panel in *Keenan* expressly "noted that no

legitimate penological justification had been offered [by the prison officials] in that case. . . ." *Id.* (citation omitted).

By contrast, in this case, prison officials offered the following legitimate penological purposes for constant illumination:

- Offenders in the Segregation Management Unit (SMU) pose a greater security risk within the institution.

- Because of the greater security risk, inmates housed in the SHU are subjected to security checks every thirty minutes.

- Constant illumination allows staff to conduct security checks without disrupting offenders by turning on the lights every thirty minutes or by shining a flashlight into the inmate's cell.

- Constant illumination prevents inmates from observing the use of lights by correctional staff to assess their proximity.

As federal judges, we are in no position to second-guess the legitimacy of these proffered justifications. *See Noble v. Adams*, 646 F.3d 1138, 1144 (9th Cir. 2011) ("When balancing the obligation to provide for inmate and staff safety against the duty to accord inmates the rights and privileges to which they are entitled, prison officials are afforded wide-ranging deference. . . .") (alteration and internal quotation marks omitted). "[W]e may not lightly second-guess [prison] officials' expert judgments" on these security issues. *Id.*

In my view, the presence of legitimate justifications for the constant illumination in the SMU sufficiently distinguishes this case from *Keenan* such that it would not be clear to a reasonable prison official that reliance on the proffered justifications for the use of constant illumination in the SMU would violate the Eighth Amendment. I would affirm the district court's grant of summary judgment in favor of the prison officials on the alternative basis that they were entitled to qualified immunity.