FILED

NOT FOR PUBLICATION

JUN 05 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   EC-13-1385-JuTaKu |
| | BAP No.   EC-13-1387-JuTaKu |
| DANA C. ANDREWS, | BAP No.   EC-13-1388-JuTaKu |
| | BAP No.   EC-13-1389-JuTaKu |
| Debtor. | (consolidated) |
| | |
| JOHN R. ROBERTS, Chapter 7 | BAP No.   EC-13-1403-JuTaKu |
| Trustee; Dana C. Andrews, | (cross-appeal) |
| | |
| Appellants, | Bk. No.   07-21846 |
| v. | Adv. No.  07-2119 |
| | |
| ANDREWS FAMILY REVOCABLE | |
| TRUST; FRANK P. ANDREWS, JR., | M E M O R A N D U M* |
| as successor co-trustee of the | |
| Andrews Family Revocable | |
| Trust; ESTHER LOU ANDREWS, as | |
| successor co-trustee of the | |
| Andrews Family Revocable | |
| Trust; BRENT H. ANDREWS, as | |
| successor co-trustee of the | |
| Andrews Family Revocable | |
| Trust; F & L ANDREWS | |
| PROPERTIES, L.P., | |
| | |
| Appellees. | |

Argued and Submitted on May 15, 2014
at Sacramento, California

Filed - June 5, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Thomas C. Holman, Bankruptcy Judge, Presiding

_____

* This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

Appearances:  Walter R. Dahl, Esq., of Dahl & Dahl, argued for appellant Dana C. Andrews; Byron Lee Lynch, Esq., argued for appellant John R. Roberts, Chapter 7 Trustee; James Joseph Banks, Esq., of Banks & Watson, argued for appellees.

_____

Before:  JURY, TAYLOR, and KURTZ, Bankruptcy Judges.

In these consolidated appeals — an appeal filed by chapter 7 trustee,[1] John R. Roberts, and a cross-appeal filed by debtor, Dana C. Andrews — trustee and debtor appeal from two separate judgments granting partial summary judgment in favor of The Andrews Family Revocable Trust (Trust), Frank P. Andrews, Jr., Esther Lou Andrews (Louise), Brent H. Andrews, as successor trustees of The Andrews Family Revocable Trust, and F&L Andrews Properties, L.P. (collectively, defendants).

In granting partial summary judgment, the bankruptcy court decided that the first through eighth claims for relief asserted by trustee in his fifth amended complaint (FAC) and by debtor in his second amended complaint in intervention (SACII) were seeking to address the same primary right and injury as debtor asserted in a prior state court lawsuit (Trust Contest) in which he was barred from contesting his rights as a beneficiary under the Trust due to a previously executed settlement agreement and mutual release between Louise and debtor. As a result, the bankruptcy court concluded that the requirements for application

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

of the doctrine of claim preclusion[2] under California law were met. Therefore, trustee and debtor were barred from proceeding on their respective complaints as a matter of law. Trustee and debtor filed post-judgment motions which the bankruptcy court denied. Discerning no error, we AFFIRM the bankruptcy court's orders and judgments in total.

## I. FACTS

### A. Prepetition Facts

#### 1. The Trust Agreement And First Amendment

On July 7, 1999, Louise and Franklyn P. Andrews, Sr. (Frank) established the Trust by executing a Declaration of Trust (Trust Agreement). Under its terms, debtor was an equal beneficiary with his three adult siblings.

Five years later Frank became terminally ill. Before his passing, Louise decided to amend the Trust Agreement. Frank's attorney, Gary Perry, advised Louise that she could not unilaterally amend the Trust as any amendments required Frank's signature. Given Frank's illness, Perry suggested that Louise could sign the amendment on behalf of Frank using his power of attorney (POA). Upon retrieving Frank's POA, Louise discovered that his signature page was missing. However, Louise allegedly thought that Perry had a copy.

On August 1, 2004, Louise executed an amendment to the Trust Agreement (First Amendment), reducing debtor's rights as a

---

[2] We use the term "claim preclusion" which has "supplanted the term 'res judicata' that was traditionally used in a now-obsolete, non-generic sense. . . ." The Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 555 (9th Cir. BAP 2002)(discussing res judicata terminology).

-3-

beneficiary, and signed Frank's name as his attorney-in-fact. Louise modified the Trust Agreement to provide that upon the death of both spouses, a specific asset known as the Auto Wreckers property would be allocated to debtor, with the income from that property to be paid 50% to debtor and 50% to debtor's children. The property itself was to be distributed to debtor when the youngest of his children reached the age of 22. The amendment also stated that debtor was not to be considered as a child of Frank and Louise so that he would not have any rights as a potential beneficiary other than with respect to the Auto Wreckers property.

Frank died on August 25, 2004, after Louise signed the First Amendment.

**2.    The Dealership Lawsuit and Settlement**

Late in 2004, debtor filed a lawsuit in the Placer County Superior Court (Dealership Lawsuit) against Louise, in her personal capacity and in her capacity as representative of the Estate of Franklyn P. Andrews Sr., and against Andrews Enterprises, Inc. (Corporation), d/b/a Andrews Lincoln-Mercury. In the complaint, debtor asserted that he was entitled to a 20% interest in the Andrews Lincoln-Mercury dealership that Louise owned. Debtor alleged causes of action for breach of fiduciary duty, rescission, unjust enrichment/constructive trust and declaratory relief based on the following alleged facts.

Debtor generally alleged that he worked as the sales manager for the dealership from 1983 to 1996. In 1996, debtor was promoted to the position of general manager, and Frank approached him about acting as the designated registered dealer

principal (RDP). The RDP is the individual responsible for making binding business decisions on behalf of the dealership. In the latter part of 1996, Frank and Louise, acting in their capacity as officers and directors of the Corporation, gifted shares of the Corporation to debtor in an amount equal to a 20% shareholder interest. In 1997, Ford changed its records to reflect that debtor was the RDP for the dealership.

Debtor further asserted that in the 1995 through 1997 time frame, Frank and Louise falsified the corporate books to show that the Corporation loaned $265,000 to debtor. Debtor maintained there was no loan and that this amount was actually compensation that the Corporation had paid debtor for his services as general sales manager and general manager. According to the complaint, Frank and Louise desired to characterize this compensation as a loan on the Corporation's books to gain more favorable tax treatment for the Corporation.

The complaint also alleged that in 1997, a third party creditor obtained a judgment against debtor and sent notice to debtor and the Corporation that he was placing a lien on debtor's stock interest in the Corporation. Debtor asserted that a few months after the notice, Frank approached him and demanded that debtor execute a security agreement encumbering his stock in connection with the $265,000 loan. Debtor objected, contending there was no loan. According to the allegations, Frank insisted that debtor encumber his stock so that the Corporation's lien would be superior to any claim by the third party creditor and allegedly threatened to disinherit debtor and eject him from property known as "The Ranch." Debtor

executed the security agreement and Frank allegedly backdated it to 1998 so it would predate the third party creditor's lien.

Finally, the complaint stated that in December 2002, Frank demanded that debtor surrender his shares in the Corporation, in accord with the invalid security agreement, and further threatened to disinherit debtor and eject him from "The Ranch" if debtor did not execute the document surrendering his shares.

In mid-August 2004, debtor made a shareholder's demand to inspect the corporate books and records, which Louise denied. Debtor then filed the lawsuit, seeking rescission of the surrender of his shares and asking the state court to impose a constructive trust over the shares and adjudicate the respective rights of the shareholders.

### a. The Restated Trust Agreement

On January 3, 2005, while the lawsuit was pending and unbeknownst to debtor, Louise executed a Restated Trust Agreement (Restated Trust Agreement), which further modified the Trust Agreement. It confirmed the provision of the First Amendment that debtor was not to be considered a child of Frank and Louise and explicitly stated that Louise had intentionally omitted to provide for debtor or his issue, except as otherwise provided. The Restated Trust Agreement further provided that out of the income from the Auto Wreckers property, $3,500 per month would be paid to debtor's children until the youngest reached the age of 22, at which point the Auto Wreckers property would be distributed to the living issue of Frank and Louise, rather than to debtor and his issue. In essence, the Restated Trust Agreement disinherited debtor from any beneficial interest

-6-

in the Trust.

**b.    The Settlement Agreement**

In June 2005, debtor and Louise executed a Settlement Agreement and Mutual Release (Settlement Agreement) to resolve the Dealership Lawsuit.  The Settlement Agreement contained a complete release of claims and matters raised in the Dealership Lawsuit complaint (the 2005 release).  In exchange, debtor received $139,000 and debt forgiveness of approximately $500,000.  The release provided:

Dana Andrews hereby releases and discharges ESTHER LOUIS ANDREWS, individually and as the Representative of the ESTATE OF FRANK ANDREWS, SR., and ANDREWS ENTERPRISES, INC., together with their agents, employees, attorneys and assigns, from any claim, demand, damages, debt, liability, account, obligation, cost, expense and any and all causes of action whether know or unknown, suspected or unsuspected, fixed, liquidated, or contingent, or otherwise arising from the Complaint or the matters raised therein, except as specifically set forth in this Settlement Agreement and Mutual Release.

Paragraph 14 stated:

The parties acknowledge that each may hereafter discover facts different from or in addition to those now known or believed to be true with respect to possible claims against each other.  Each agrees that this Settlement Agreement and Mutual Release shall be and remain valid, final and in full force and effect in all respects, notwithstanding the existence or belief respecting any such different or additional facts.  Specifically the parties waive any rights pursuant to [California] Civil Code Section 1452 which states:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

On July 8, 2005, the state court approved the Settlement Agreement and the Dealership Lawsuit was dismissed with

prejudice.

### 3. The Trust Contest

In December 2005, in connection with the estate of Frank, debtor filed a petition in the Placer County Superior Court contesting the validity of the First Amendment and seeking an accounting (Trust Complaint). Debtor alleged that the First Amendment was not valid because it (1) was contrary to the terms of the Trust and the true wishes of his father; (2) was the result of undue influence; and (3) was procured by the fraud of others by misrepresenting facts and conduct of the parties.

Louise denied the allegations and filed a motion seeking an order for a separate trial on her special defense of claim preclusion pursuant to Cal. Civil Code § 597. Louise argued that debtor was precluded from contesting his rights as a beneficiary under the Trust because of the 2005 release contained in the Settlement Agreement, which was confirmed by the state court in the Dealership Lawsuit.

Her trial brief filed in support of the motion argued that debtor's entitlement to any inheritance was raised in the Dealership Lawsuit and that these issues were addressed and fully resolved by the Settlement Agreement. Louise asserted that the possibility of disinheritance was a fact raised in the Trust Complaint at ¶¶ 19, 20, 26, 27, 33, 34, 51 and 52. Louise further maintained that debtor's counsel insisted that his inheritance was an integral part of the Dealership Lawsuit and that the estate documents were available to debtor and his counsel when the Dealership Lawsuit was filed, but they did nothing to obtain them. Last, Louise pointed out that debtor's

-8-

special interrogatories numbered 133-137 served in the Dealership Lawsuit sought information about Frank's estate. Louise argued that these interrogatories plainly sought information based on the allegation in the complaint that Frank threatened to disinherit debtor.

### a. Perry's Deposition

Six months after the Trust Contest was filed, on July 12, 2006, debtor's attorney took the deposition of Perry. In response to questions pertaining to Frank's POA, Perry testified that his copy of Frank's POA was missing page 4, which was the signature page. Perry further testified that he witnessed Frank's signature on the document, that his notary witnessed it, but that somehow page 4 was lost. In response to questions about the recorded POA, which debtor had located after his father's death,[3] Perry explained that he needed Frank's POA to record transfers of real property requested by Louise. Therefore, he put together Frank's signature page from his durable health care power of attorney with the POA so as to create a recordable document. Perry opined that although there was not a copy of the signature page that Frank had signed, this fact did not revoke the POA. Instead, he was simply doing what he needed to do to comply with the recoding statutes to make the deeds recordable. Accordingly, Perry recorded the POA with the signature page of the durable health care power attached to Frank's POA in Placer County after Frank's death.

---

[3] The recorded POA was attached as an exhibit to the Trust Contest.

### b. The State Court's Decision to Apply Claim Preclusion

The Trust Contest was scheduled for trial on February 21, 2007. Prior to the trial, the state court considered Louise's special defense. The court found that the Dealership Lawsuit complaint overlapped with the claims asserted in the Trust Complaint because of allegations that included Frank's threats of disinheritance. The court concluded that the Settlement Agreement, which included the 2005 release, barred debtor's claims asserted in the Trust Contest. As a result, the court deemed a trial on the merits was unnecessary and entered judgment in favor of Louise and the Trust on June 4, 2007 (Trust Contest Judgment). Debtor appealed (Trust Contest Appeal).

Debtor in the meantime had filed a chapter 11 petition on March 19, 2007.

## B. The Adversary Proceeding

On April 30, 2007,[4] debtor filed an adversary proceeding against defendants and Perry, which included claims based upon the allegedly forged POA and invalid First Amendment. Defendants filed a motion to dismiss, which was granted in part with leave to amend. The bankruptcy court ordered that if debtor filed an amended complaint, the matter would be stayed pending resolution of the Trust Contest Appeal. Debtor filed an amended complaint and the court entered an order staying the adversary proceeding.

---

[4] About a month after the adversary proceeding was filed, Louise died.

In October 2007, debtor's case was converted to a chapter 7 and Roberts was appointed the chapter 7 trustee. Trustee became the plaintiff in the adversary proceeding and filed a third and then fourth amended complaint.

In October 2008, trustee intervened in the Trust Contest Appeal, in his capacity as the chapter 7 trustee and successor of debtor, and was substituted as the real party in interest. Thereafter, trustee filed a "Notice of Abandonment of Appeal" in the state appellate court for the purpose of obtaining a dismissal of the appeal. Debtor moved to have the trustee abandon the Trust Contest Appeal under § 554; the bankruptcy court denied this motion without prejudice. In December 2008, trustee agreed with defendants to dismiss the Trust Contest Appeal, and it was dismissed.

After the Trust Contest Appeal was dismissed, and the stay of the adversary proceeding was lifted, trustee filed the FAC alleging that debtor remained a beneficiary of the Trust because the POA used by Louise was a forgery and thus the First Amendment was invalid. The FAC contained ten claims for relief, eight of which are at issue in this appeal: (1) Declaratory Judgment to Determine the Respective Interests of the Plaintiff and the Debtor in and to the Trust Estate; (2) Turnover of Property Pursuant to § 543; (3) Recovery of Property Pursuant to the Plaintiff's Avoidance Powers under § 544; (4) Accounting for the Debtor's Alleged Beneficial Interest in the Trust; (5) Cancellation of the Durable Power of Attorney; (6) Cancellation of the First Amendment; (7) Avoidance of Post Petition Transfer of Estate Property Pursuant to § 549; and

-11-

(8) Breach of Fiduciary Duty by Louise as Trustee for the Trust. The ninth and tenth claims for relief were against Perry. In May 2012, the bankruptcy court approved a compromise between Perry and trustee whereby Perry paid $33,000 to the estate. Subsequently, Perry was dismissed from trustee's FAC and the ninth and tenth claims were dismissed.

Defendants answered the FAC by asserting general denials and affirmative defenses, including, among others, that the FAC was barred under the doctrines of claim and issue preclusion due to the entry of the Trust Contest Judgment in favor of Louise based on the 2005 release contained in the Settlement Agreement.

Debtor, a named defendant in the FAC, was permitted to intervene as a plaintiff in the adversary proceeding. Debtor filed the SACII on October 25, 2010, which contained thirteen claims for relief. The first through eighth claims for relief essentially mirrored those in trustee's FAC. However, the SACII included new claims in the ninth through thirteenth claims for relief: (9) civil conspiracy under Cal. Civil Code § 1714.10; (10) violation of Cal. Probate Code § 16061.7; (11) constructive fraud; and (12) and (13) avoidance of fraudulent transfer under § 548. The bankruptcy court later dismissed these claims without leave to amend on the grounds that they were new claims not brought in trustee's FAC and debtor lacked prudential standing to assert them.

**1. Defendants' Motion For Summary Judgment**

On January 8, 2013, defendants filed a motion for summary judgment (MSJ) based on the affirmative defenses of claim and issue preclusion asserted in their answers to the FAC and SACII.

Defendants maintained the Trust Contest Judgment barred trustee and debtor from proceeding on the first through eighth claims for relief in their respective complaints as a matter of law. Defendants also asserted that the debtor was not entitled to any distribution from the Trust based on the plain language in the First Amendment and Restated Trust Agreement as a matter of law.

On March 19, 2013, the bankruptcy court entered a civil minute order granting defendants' MSJ. In its findings of fact and conclusions of law (FFCL), the court found that all the requirements for application of claim preclusion were met under California law and thus trustee and debtor were barred from proceeding on their respective complaints. Because claim preclusion applied, the court found it unnecessary to address other grounds for relief asserted in defendants' MSJ. On May 15, 2013, the bankruptcy court entered separate judgments against trustee and debtor.

**2.    Trustee's Post-Judgment Motions**

Trustee subsequently filed a motion to amend the judgment under Civil Rule 59(e), incorporated by Rule 9023, or, alternatively, for reconsideration under Civil Rule 60(b)(4) and (6), incorporated by Rule 9024. Trustee maintained reconsideration was appropriate because the POA was a forgery rendering the First Amendment void ab initio. Trustee further argued that, even assuming that the First Amendment was not void, debtor retained an interest in the Trust after the First Amendment was signed, and it was not until Louise signed the Restated Trust Agreement that debtor's beneficial rights in the trust estate were completely eliminated. Trustee asserted that

-13-

debtor did not discover the forgery or the Restated Trust Agreement until after the Trust Contest Judgment had been entered, and, therefore, under the newly discovered facts exception in Allied Fire Prot. v. Diede Const., 127 Cal.App.4th 150 (Cal. Ct. App. 2006), claim preclusion did not apply. Finally, citing Groves v. Peterson, 100 Cal.App.4th 659 (Cal. Ct. App. 2002), trustee contended that the Trust Contest Judgment could not have a preclusive effect when the matter was decided on procedural rather than substantive grounds.

In early July, the bankruptcy court issued its FFCL denying trustee's motions. On July 26, 2013, and August 2, 2013, the court entered the orders denying trustee's motions.

On August 8, 2013, trustee filed a notice of appeal (NOA) with respect to four orders: (1) a March 19, 2013 civil minute order granting partial summary judgment based on claim preclusion in favor of defendants; (2) a May 15, 2013 judgment on the FAC filed by trustee in this adversary proceeding; (3) a July 26, 2013 civil minute order denying trustee's motion to amend findings; and (4) an August 2, 2013 civil minute order sustaining the defendants' objections to trustee's motion to amend findings. The NOA was transmitted to the BAP by four separate notices of referral. As a result, four separate appeal numbers were assigned: EC-13-1385, EC-13-1387, EC-13-1388, and EC-13-1389. The Clerk's office subsequently issued an Order stating that since all four orders on appeal were listed in the same NOA, it appeared that consolidation was appropriate. The parties filed a non-opposition and the court entered an order consolidating the four matters.

-14-

### 3. Debtor's Post-Judgment Motion

On May 28, 2013, debtor filed a motion to alter or amend the bankruptcy court's judgment. Debtor argued that trustee's dismissal or compromise of the Trust Contest Appeal was done without notice and thus there was a violation of due process. Debtor further argued that trustee failed to adequately represent his interest by dismissing the Trust Contest Appeal and by failing to plead a fraudulent conveyance action under § 548, which would have permitted trustee to avoid the 2005 release as a fraudulent conveyance. Finally, debtor maintained that the doctrine of claim preclusion could not apply to those claims for relief for which the bankruptcy court has exclusive original jurisdiction, such as claims based on §§ 543, 544, 549, 548.

On July 2, 2013, the bankruptcy court entered its FFCL denying debtor's motion and on August 7, 2013, entered an order consistent with its decision. Debtor filed a timely appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(E), (H) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court erred in determining that claim preclusion barred the first through eighth claims for relief pled in trustee's FAC and debtor's SACII; and

B. Whether the bankruptcy court abused its discretion in denying trustee's and debtor's post-judgment motions.

///

-15-

## IV. STANDARDS OF REVIEW

We review summary judgment de novo. Grenning v. Miller-Stout, 739 F.3d 1235, 1238 (9th Cir. 2014). We also review de novo the preclusive effect of a judgment. Bankruptcy Recovery Network v. Garcia (In re Garcia), 313 B.R. 307, 310 (9th Cir. BAP 2004).

We review decisions regarding relief from judgment under Rules 9023 and 9024, which incorporate Civil Rules 59(e) and 60(b), for abuse of discretion. Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223 (9th Cir. 2000); Morris v. Peralta (In re Peralta), 317 B.R. 381, 385 (9th Cir. BAP 2004). A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc).

## V. DISCUSSION

A bankruptcy court may grant summary judgment when the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The preclusive effect of a prior state court judgment may serve as the basis for granting summary judgment. In re Imperial Corp. of Am., 92 F.3d 1503 (9th Cir. 1996); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 832 (9th Cir. BAP 2006). Because the Trust Contest Judgment was entered in a court in California, we apply California claim preclusion law to determine its preclusive

-16-

effect. See Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); 28 U.S.C. § 1738 (requiring federal courts to give "full faith and credit" to state court judgments).

Under California law, "claim preclusion precludes the relitigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them." Mycogen Corp. v. Monsanto Co. 28 Cal.4th 888, 896 (Cal. 2002). For claim preclusion to apply, three requirements must be satisfied: (1) the second lawsuit must involve the same "cause of action" as the first lawsuit; (2) the first lawsuit must have resulted in a final judgment on the merits; and (3) the party to be precluded must have been a party, or in privity with a party, to the first lawsuit. San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 734 (9th Cir. 2008) (SDPOA v. SDCERS); Bullock v. Philip Morris USA, Inc., 198 Cal.App.4th 543, 557 (Cal. Ct. App. 2011). On occasion, California courts have inquired into fairness and public policy before applying the doctrine of claim preclusion, but unlike issue preclusion, the inquiry is not mandatory. See Kopp v. Fair Pol. Practices Com., 11 Cal.4th 607, 620-622 (Cal. 1995) (public policy considerations may warrant an exception to the claim preclusion aspect of res judicata, at least where the issue is a question of law rather than of fact).

Here, only the first element is at issue: whether the FAC and SACII involve the same "causes of action" as those alleged in the Trust Contest. Neither trustee nor debtor claim a lack

of privity nor do they contend that the Trust Contest Judgment is not final. In any event, as noted by the bankruptcy court, a bankruptcy trustee stands in privity with a debtor for purposes of preclusion in cases involving a debtor's property rights. See In re Montgomery Ward, LLC, 634 F.3d 732, 737 (3d Cir. 2011); Comty. Bank v. Torcise, 162 F.3d 1084, 1087 n.7 (11th Cir. 1998). Further, the Trust Contest Judgment entered on June 4, 2007, ordered that debtor "take nothing away" from the Trust Contest and entered judgment in favor of Louise and the Trust. Debtor appealed the judgment, but the trustee took control of the litigation when debtor's case was converted and trustee subsequently stipulated to dismiss the appeal. Accordingly, the Trust Contest Judgment is final. See Sullivan v. Delta Air Lines, Inc., 15 Cal.4th 288, 303-304 (Cal. 1997).

## A.    Identity of Claims

In assessing claim preclusion, California courts examine whether the two actions concern a single "cause of action" under the primary rights theory. SDPOA, 568 F.3d at 734; Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 787 (Cal. 2010); Mycogen Corp., 28 Cal.4th at 924. Under this theory, a cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty. Mycogen Corp., 28 Cal.4th at 904.

> As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the legal theory on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' The primary right must also be distinguished from the remedy sought: 'The violation

-18-

of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.'

Id. Thus, while a "cause of action" for pleading purposes focuses on the legal theory for recovery, i.e., breach of contract, negligence, conversion, a "cause of action" under the primary rights theory considers the broader question of the injury or harm suffered. "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." Id. In sum, "[i]f an action involves the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit, the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174 (Cal. Ct. App. 1983).

Defendants' MSJ was directed at the first through eighth claims for relief[5] asserted in the FAC and SACII.[6] As the bankruptcy court observed, a comparison of the eight claims for relief in the FAC and SACII shows that they are identical, and the allegations contained in the SACII with respect to these

---

[5] Because the federal pleading system deals in claims we use the term "claim for relief" rather than the state law concept of "causes of action." This difference between the federal and state pleading systems does not matter for purposes of applying the primary rights theory under California law.

[6] As previously noted, the remaining claims in the FAC and SACII were resolved outside defendants' MSJ.

-19-

claims mirror those in the FAC.

**1.    The Primary Rights And Harm Suffered Are The Same**

Here, the bankruptcy court determined that the first (Declaratory Judgment to Determine the Respective Interests of the Plaintiff and the Debtor in and to the Trust Estate), fourth (Accounting for the Debtor's Alleged Beneficial Interest in the Trust), fifth (Cancellation of the Durable Power of Attorney), sixth (Cancellation of the First Amendment); and eighth (Breach of Fiduciary Duty by Louise as Trustee for the Trust) claims for relief alleged in the FAC and SACII were barred by the doctrine of claim preclusion because they were based on the same primary right and harm suffered by debtor in the Trust Contest.  Under our de novo review, we agree.

A comparison of the Trust Contest allegations and those in the above-mentioned claims for relief reveal that debtor seeks vindication of the same primary right, namely, his right to be free from any wrongful reduction in his rights as a beneficiary under the Trust.  In addition, both the Trust Complaint and the first, fourth, fifth, sixth and eighth claims for relief in the FAC and SACII seek redress for the same harm — the wrongful reduction of debtor's rights as a beneficiary under the Trust.

In the Trust Contest, debtor claimed that he had a substantial interest in the Trust and alleged Louise "purportedly acting as agent under [Frank's] Attorney-In-Fact, amended the Trust."  A copy of the POA was attached to the Trust Complaint.  The Trust Complaint further alleged that the First Amendment was invalid because, among other things, it was procured "as a result of fraud of others by misrepresenting

-20-

facts and conduct of the parties." The difference between the fraud alleged in the Trust Contest and the fraud alleged as part of the first, fourth, fifth, sixth and eight claims for relief in the FAC and SACII is the allegation that Frank's POA was forged thereby making the First Amendment invalid. Although debtor contends otherwise, this "new fact" does not alter the application of the primary rights analysis when debtor seeks redress of the same harm — the wrongful reduction of his rights as a beneficiary under the Trust. See Eichman, 147 Cal.App.3d at 1174.

## 2. Trustee's Arguments

On appeal, trustee makes many of the same arguments advanced in his post-judgment motions which relied upon exceptions to claim preclusion of an earlier judgment.

First, trustee seeks to avoid the application of the claim preclusion doctrine by invoking the newly discovered facts exception set forth in Allied Fire with respect to the POA and Restated Trust Agreement. That exception applies when the plaintiff discovers new facts after filing his or her complaint, and those facts give rise to a new claim or cause of action that is not set forth in the complaint.

Before discussing the applicability of the newly discovered facts exception to this case, we note that trustee concedes that he did not specifically plead the Restated Trust Agreement in his FAC. Despite this failure, in addition to their claim preclusion argument, defendants asserted in their MSJ that if the First Amendment and the Restated Trust Agreement were given effect according to their terms, debtor had no beneficial

-21-

interest in the Trust. However, when ruling on the MSJ, nowhere does the bankruptcy court mention the Restated Trust Agreement in its FFCL. Instead, the court found it unnecessary to address the other grounds for relief asserted in defendants' MSJ after concluding the doctrine of claim preclusion applied. Moreover, the bankruptcy court rejected trustee's arguments regarding the newly discovered facts exception in its FFCL in connection with trustee's post-judgment motions without ever mentioning the Restated Trust Agreement. Accordingly, because the Restated Trust Agreement was neither pled in trustee's FAC nor addressed by the bankruptcy court in any of its rulings, we do not make any determinations about the agreement for the first time on appeal.

In any event, we do not find the holding in Allied Fire applicable under these circumstances. Nowhere in the case does the court mention the primary rights theory. Although not stated explicitly, it appears the court applied federal rather than California preclusion law.[7] Because California claim preclusion law applies to this case, we are bound to follow California Supreme Court precedent that uses the primary rights theory. See Werthan Bag Corp. v. Agnew, 202 F.2d 119, 124-25 (6th Cir. 1953). As previously stated in our discussion applying the primary rights theory, debtor did not obtain a "new

_____

[7] Applying federal preclusion law would have been proper. The state court was considering the preclusive effect of a federal judgment on state court litigation. See Younger v. Jensen, 605 P.2d 813, 822 (Cal. 1980) ("A federal judgment has the same effect in the courts of this state as it would have in a federal court.").

-22-

claim" that could be litigated in a new lawsuit when he discovered that Frank's POA was allegedly fraudulent after filing the Trust Contest. Rather, the forgery was simply a "new fact" that supported debtor's claim in the Trust Contest that the amendment was procured by fraud.[8] This fact, like the others alleged, sought redress of the same harm or primary right — the wrongful reduction of his rights as a beneficiary under the Trust.

We also note that the state court in the Trust Contest applied claim preclusion based on the release in the Dealership Lawsuit. Therefore, it would not matter what "new facts" or "new claims" debtor could have alleged. The state court's interpretation of the broad scope of the release would have ended the Trust Contest. Accordingly, analysis under both the primary rights theory and the release itself demonstrate that Allied Fire does not apply under these circumstances.

Next, citing Groves, 100 Cal.App.4th 659, trustee argues that when a matter is decided on procedural as opposed to substantive grounds, there is no preclusive effect. According to trustee, the state court in the Trust Contest decided the case by a motion, without giving debtor an opportunity to present evidence showing that the POA was a forgery, or that he first discovered the forgery after the Trust Contest was filed.

---

[8] We also do not countenance debtor's position that the forged POA was a "newly discovered fact" after the filing of the Trust Contest when the record suggests otherwise. The POA attached to the Trust Complaint reveals the alleged fraud on its face: Pages one and two are from the general durable POA and pages three and four are from the healthcare POA.

-23-

Trustee concludes that in similar circumstances, the Groves court held that there is no preclusive effect. As an add-on argument, trustee contends that debtor was denied due process of law.[9] We are not persuaded.

The Groves decision set forth the narrow rule that collateral estoppel, or issue preclusion, will not be applied to facts found in connection with a motion to set aside a default judgment where the motion was decided on declarations only, and there was no oral testimony. Id. at 668-69. On its face, Groves does not apply since we are dealing with claim preclusion and not issue preclusion. Moreover, the Trust Contest did not involve a motion to set aside a default judgment which was decided on declarations only. Rather, Louise filed her motion under Cal. Civ. Code § 597 seeking to have the trial court decide her special defense of claim preclusion before a trial on the merits. Accordingly, Groves does not support trustee's position.

_____

[9] Although somewhat unclear, trustee's due process argument appears based on §26(1)(d) of the Restatement Second of Judgments which states as follows:

> (1) When any of the following circumstances exists, the general rule of [section] 24 [claim preclusion] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
> . . .
> (d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim.

Restatement (Second) of Judgments § 26(1)(d)(1982).

-24-

Trustee's due process argument is also not persuasive. At the hearing on this matter, trustee argued that the state court's granting of Louise's motion in limine to exclude evidence of the forgery deprived debtor of due process. However, we fail to see how the court's granting of the motion could deprive debtor of due process when the court previously found the release to encompass all future claims. Under these circumstances, evidence of the forgery would not matter. In any event, if the trustee perceived an error in the court's ruling on the motion in limine, the trustee's remedy was to pursue the appeal in the state appellate court.

Trustee's remaining arguments and supporting analysis are similarly unhelpful. Trustee argues that the POA and First Amendment are "void ab initio" due to fraud and that both the state court and the bankruptcy court lacked subject matter jurisdiction to "ratify" such documents. Trustee's "void ab initio" argument is nothing more than a legal conclusion that flows from the alleged forgery, the merits of which neither the state court nor the bankruptcy court addressed. Further, trustee cites no authority for the proposition that applying claim preclusion equates to a "ratification" of the allegedly void documents. Moreover, the state court's decisions were premised on the Settlement Agreement and Release, which did not flow from the POA. Finally, trustee's argument that the state court lacked subject matter jurisdiction over the Trust Contest is not supported by any of the authorities cited. In the end, trustee has provided no basis for reversal of the orders and judgment on appeal.

-25-

### 3. Debtor's Arguments

First, debtor argues that the bankruptcy court erred when it determined the Settlement Agreement in the Dealership Lawsuit barred debtor's recovery. The bankruptcy court made no such determination. It was the Placer County Superior Court which determined the effect of the Settlement Agreement in the Trust Contest. Believing that decision was wrong, debtor appropriately appealed the Trust Contest Judgment. However, the appeal has since been dismissed and the judgment is now final. Debtor is bound by that judgment.

Second, citing Allied Fire, debtor contends the doctrine of claim preclusion cannot bar claims that arise after the initial complaint is filed. We reject debtor's assignment of error on this ground for the same reasons we rejected trustee's.

Third, debtor asserts that the bankruptcy court erred when it determined that claim preclusion applied to his second (Turnover of Property Pursuant to § 543), third (Recovery of Property Pursuant to the Plaintiff's Avoidance Powers under § 544), and seventh (Avoidance of Post Petition Transfer of Estate Property Pursuant to § 549) claims for relief because they arose under the bankruptcy code. However, the bankruptcy court did not so rule, instead finding that the claims under § 543, 544, and 549, were premised on the same facts and circumstances as those alleged in the first, fourth, fifth, sixth and eighth claims for relief. Because the court concluded that neither debtor nor his estate could recover an interest from the Trust, the court reasoned that there was no corpus to which trustee's § 544 lien could attach. The bankruptcy court

-26-

found the second and seventh claims for relief failed for the same reason. We agree with the bankruptcy court's assessment that without an interest in the Trust, there could be no claim for turnover of property of the estate under § 543 as a matter of law nor could there be a claim for avoidance of a postpetition interest in property of the estate under § 549. Therefore, the bankruptcy court properly granted summary judgment in favor of defendants on these claims.

Next, debtor resurrects his twelfth and thirteenth claims for relief alleged in the SACII based on § 548 fraudulent transfer law, arguing that the bankruptcy court erred by determining that claim preclusion barred those claims. Again, the court did not make that ruling. Instead, the bankruptcy court previously dismissed those claims on the ground that those were new claims not pled by trustee in the FAC and debtor had no prudential standing to assert them. The bankruptcy court's determination that debtor lacked independent standing was not error.

Debtor also argues that the bankruptcy court erred when it determined that he lacked standing to prosecute the Trust Contest Appeal. Debtor asserts the error occurred because under the spendthrift provisions of the Trust and § 541(c)(2), debtor's interest in the Trust did not become property of the estate. Debtor fails to make the connection between this alleged error and the instant appeal, as nowhere in the court's rulings on the MSJ or the post-judgment motions do we find any reference to, or a ruling on, debtor's standing to prosecute the Trust Contest Appeal. Rather, the record shows that the

-27-

bankruptcy court dismissed, without prejudice, debtor's application to deem the appeal abandoned property because trustee had not filed a motion that complied with § 554 and debtor had not met his burden under § 554. As far as we can tell, debtor never renewed his request for abandonment and the Trust Contest Appeal was dismissed on February 6, 2009. Also, debtor did not appeal the dismissal order, which is final. The propriety of that order is not before us in this appeal. Accordingly, this alleged assignment of error cannot be a basis for reversing the bankruptcy court's decision granting partial summary judgment to defendants.

Finally, debtor did not raise any specific arguments concerning the bankruptcy court's denial of his post-judgment motion in this appeal. Therefore, any challenges debtor may have to that order are waived. Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir. 1995).

## VI. CONCLUSION

For the reasons stated, we AFFIRM the bankruptcy court's decision in all respects.

-28-